No. 24-5817

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ANDREW PANDOLFI and MANDI SHAWCROFT, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees,*

v.

AVIAGAMES, INC.; VICKIE YANJUAN CHEN; and PING WANG,

*Defendants-Appellants.*

On Appeal from the United States District Court for the Northern District, Case No. 3:23-cv-05971-EMC, Honorable Edward M. Chen

---

## APPELLANTS' REPLY BRIEF

| | |
|---|---|
| STEVEN K. TAYLOR - #204668<br>MICHELLE YBARRA - #260697<br>DAN JACKSON - #216091<br>MAILE N. YEATS-ROWE - #321513<br>KEKER, VAN NEST & PETERS LLP<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone: (415) 391-5400<br>Facsimile: (415) 397-7188<br>staylor@keker.com<br>mybarra@keker.com<br>djackson@keker.com<br>myeats-rowe@keker.com<br><br>*Attorneys for Defendant-Appellant AVIAGAMES, INC.* | ASIM M. BHANSALI- #194925<br>KATE E. LAZARUS - #268242<br>KWUN BHANSALI LAZARUS LLP<br>555 Montgomery St., Ste 750<br>San Francisco, CA 94111<br>Telephone: (415) 630-2350<br>abhansali@kblfirm.com<br>klazarus@kblfirm.com<br><br>*Attorneys for Defendants-Appellants VICKIE YANJUAN CHEN and PING WANG* |

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .............................................................. 1

II.   ARGUMENT .................................................................... 4

    A.    The delegation clause is not procedurally unconscionable. ........................................................ 4

          1.    The delegation clause is not a contract of adhesion and is not procedurally unconscionable because users could opt out............................ 4

          2.    The delegation clause was not unfairly surprising. ..................................................................... 9

          3.    Plaintiffs' reliance on *Heckman* is misplaced.... 14

    B.    The delegation clause is not substantively unconscionable. ...................................................... 20

          1.    At the time of contracting, Plaintiffs were on notice of both the potential for delay and the opportunity to opt out of arbitration. ................ 20

          2.    Focusing on the time of contracting does not relieve Plaintiffs of their burden to show unconscionability in *this* case. ......................... 21

          3.    Process Arbitrators may rule on their own jurisdiction and thus may decide arbitrability.... 24

          4.    Plaintiffs' argument that users are forced to give up their right to experienced counsel is meritless. ...................................................... 27

          5.    The bellwether procedure is a reasonable means of case management. ....................................... 29

    C.    If the bellwether provision is unconscionable, it should be severed and the delegation clause should be enforced...........................................................31

D.    The arbitration agreement as a whole is not unconscionable. ..................................................35

       1.    The arbitration agreement is not procedurally unconscionable. ........................................35

       2.    The arbitration agreement is not substantively unconscionable. ........................................36

E.    If the bellwether and limitations provisions are unconscionable, they should be severed................38

F.    *Discover Bank* does not apply here. ......................39

III.    CONCLUSION ...........................................................41

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..................................................... 39, 41

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ...................................... 16, 36

*Briggs v. Merck Sharp & Dohme*,
  796 F.3d 1038 (9th Cir. 2015) ............................................ 30

*Dohrmann v. Intuit, Inc.*,
  823 F. App'x 482 (9th Cir. 2020) ...................................... 12

*Green Tree Fin. Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000) ................................................. 23, 24, 31

*Hale v. Brinker Int'l, Inc.*,
  No. 21-CV-09978-VC, 2022 WL 2187397 (N.D.
  Cal. June 17, 2022) ........................................................... 33

*In re Hanford Nuclear Rsrv. Litig.*,
  534 F.3d 986 (9th Cir. 2008) .............................................. 30

*Heckman v. Live Nation Ent., Inc.*,
  686 F. Supp. 3d 939 (C.D. Cal. 2023) ....................... *passim*

*Heckman v. Live Nation Entertainment, Inc.*,
  120 F.4th 670 (9th Cir. 2024) .................................... *passim*

*Keebaugh v. Warner Bros. Ent. Inc.*,
  100 F.4th 1005 (9th Cir. 2024) ............................... 15, 16, 36

*Lim v. TForce Logistics, LLC*,
  8 F.4th 992 (9th Cir. 2021) ................................... 12, 13, 14

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ......................................... 16, 36

2889709

*Mohamed v. Uber Techs., Inc.*,
109 F. Supp. 3d 1185 (N.D. Cal. 2015) ...........................6, 7

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016)...................................*passim*

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013).....................................24, 26

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017)............................................17

*Ronderos v. USF Reddaway, Inc.*,
114 F.4th 1080 (9th Cir. 2024).........................................37

*Ruiz v. CarMax Auto Superstores, Inc.*,
No. EDCV231986JGBKKX, 2024 WL 1136332
(C.D. Cal. Jan. 18, 2024)...................................................29

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016)...........................................36

**State Cases**

*A&M Produce Co. v. FMC Corp.*,
135 Cal. App. 3d 473 (1982) ..............................................9

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000)........................................................33

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022)..............................................12

*De Leon v. Pinnacle Property Management Services, LLC*,
72 Cal. App. 5th 476 (2021).............................................38

*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005).................................................39, 41

iv

*Gentry v. Superior Court,*
    42 Cal. 4th 443 (2007)............................................6, 7, 8, 38

*Jenkins v. Dermatology Management, LLC,*
    107 Cal. App. 5th 633 (2024)..............................................37

*Lane v. Francis Cap. Mgmt. LLC,*
    224 Cal. App. 4th 676 (2014)..............................................17

*Little v. Auto Stiegler, Inc.,*
    29 Cal. 4th 1064 (2003)................................................32, 33

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt.*
    *Dev. (US), LLC,*
    55 Cal. 4th 223 (2012).......................................................27

*Ramirez v. Charter Commc'ns, Inc.,*
    16 Cal. 5th 478 (2024)................................................36, 37

*Sanchez v. Valencia Holding Company,*
    61 Cal. 4th 899 (2015).....................................11, 21, 22, 38

*Swain v. LaserAway Med. Grp., Inc.,*
    57 Cal. App. 5th 59 (2020)...................................................8

2889709

## I.    INTRODUCTION

As Defendants-Appellants Aviagames, Inc., Vickie Yanjuan Chen, and Ping Wang (collectively "Avia") demonstrated in their opening brief, the district court made multiple errors in denying Avia's motion to compel arbitration, each of which is an independent ground for reversal. The contrary arguments of Plaintiffs-Appellees Andrew Pandolfi and Mandi Shawcroft (collectively "Plaintiffs") have no merit.

*First*, contrary to Plaintiffs' assertions, the arbitration agreement was not a "take it or leave it" contract of adhesion. Plaintiffs had the opportunity to opt out of arbitration—while continuing to play Avia games—by simply sending an email. "[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016). It is no answer to claim, as Plaintiffs do, that the opt-out provision was "buried" in the arbitration agreement. The opt-out provision here was *not* buried, and even if "the opt-out provision was 'buried in the agreement' . . . one who signs a contract is bound by its

1

provisions and cannot complain of unfamiliarity with the language of the instrument." *Id.* (citation and quotation marks omitted). As in *Mohamed*, this Court should hold that the clause delegating questions of arbitrability to the arbitrator is not procedurally unconscionable and reverse the district court's denial of the motion to compel arbitration.

*Second*, there is nothing substantively unconscionable about the delegation clause or the arbitration agreement. The agreement preserves individual, bilateral arbitration while providing an orderly and cost-efficient means of managing large numbers of near-identical claims brought by the same or coordinated counsel. If twenty-five or more such claims are brought, the American Arbitration Association (AAA) rules for dealing with such mass filings apply. Further, "[c]ounsel for claimants and counsel for Aviagames shall each select ten (10) cases (per side) to proceed first in individual arbitration proceedings. The remaining cases shall be deemed filed for purposes of the statute of limitations but not for the purpose of assessing AAA fees." 3-ER-403 §15(c)(6). This bellwether

2

procedure is designed to streamline litigation, reduce costs, and encourage settlement, like similar bellwether procedures used in Multidistrict Litigation (MDL) proceedings. There is nothing unconscionable about it.

Plaintiffs argue that there might be a delay in deciding large numbers of cases under the bellwether procedure. But Plaintiffs did not demonstrate any delay in *their* case. Plaintiffs submitted declarations from a law firm (Kind Law) that brought claims in a separate set of arbitrations, but Plaintiffs did not show that their own claims would be joined with the Kind Law claims for purposes of the bellwether procedure. Nor did they show that there would be any unreasonable delay in deciding the threshold issue of unconscionability; nor that the arbitrators would lack the ability to ameliorate any such delay.

*Third*, if the bellwether provision would result in unconscionable delay, then it should be severed. Indeed, severing the bellwether provision will simply mean that the AAA Supplementary Rules for Multiple Case Filings apply without the

3

bellwether procedure. *See* 3-ER-403 §15(c)(6). Plaintiffs' own *amicus* holds those rules out as a model of "case-management measures parties can adopt to facilitate efficient resolution of large numbers of similar claims." Public Citizen Br. (Dkt. 35.1) at 16.

For these and other reasons set forth below and in Avia's opening brief, this Court should reverse the district court's denial of Avia's motion to compel arbitration and order that this case proceed to arbitration.

## II.   ARGUMENT

### A.   The delegation clause is not procedurally unconscionable.

#### 1.   The delegation clause is not a contract of adhesion and is not procedurally unconscionable because users could opt out.

Plaintiffs argue that the delegation clause is a contract of adhesion. *See* Answering Br. of Appellees ("AB") 16-17. Under this Court's binding precedents, however, "an arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed*, 848 F.3d at 1211. Plaintiffs had the opportunity to opt out of the arbitration agreement, including the

4

delegation clause. *See* 3-ER-403; 3-ER-433 §15(e). Thus, the delegation clause is not adhesive and not procedurally unconscionable. The Court can and should reverse the district court on that ground alone, as in *Mohamed*.

In *Mohamed*, the district court held that a delegation clause was procedurally unconscionable, even though the arbitration agreement had an opt-out provision, because (among other reasons) the delegation clause was "hidden in a prolix printed form." 848 F.3d at 1210 (citation omitted). The district court acknowledged that, "under Ninth Circuit precedent, 'the existence of a meaningful right to opt-out of [arbitration] necessarily renders [the arbitration clause] (and the delegation clause specifically) procedurally conscionable as a matter of law.'" *Id.* (quoting *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1212 (N.D. Cal. 2015) (Chen, J.) (citing *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002), *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002), and *Kilgore v. KeyBank, Nat'l*, 718 F.3d 1052 (9th Cir. 2013) (en banc)). But the district court held that "each of those decisions

5

failed to apply California law as announced by the California Supreme Court" in *Gentry v. Superior Court*, 42 Cal. 4th 443, 466-73 (2007), *abrogated on other grounds as stated in Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 360 (2014). *Mohamed*, 109 F. Supp. 3d at 1212.

This Court reversed. "The district court does not have the authority to ignore circuit court precedent, and neither do we." 848 F.3d at 1211. "[T]he threshold inquiry in California's unconscionability analysis is 'whether the arbitration agreement is adhesive.'" *Id.* (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (en banc) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000))). "[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Id.* Accordingly, the agreement at issue in *Mohamed* was "not adhesive, which supports our holding that the delegation provision is not unconscionable." *Id.* This Court should reach the same conclusion here.

Plaintiffs argue otherwise, relying on *Gentry*. AB 17. As this Court held in *Mohamed*, however, *Gentry* is not grounds

for departing from binding Ninth Circuit precedent that "an arbitration agreement is not adhesive if there is an opportunity to opt out of it." 848 F.3d at 1211; *cf. Mohamed*, 109 F. Supp. 3d at 1212. In any case, *Gentry* is readily distinguishable. There, it was "not clear that someone in Gentry's position would have felt free to opt out. . . . Given the inequality between employer and employee and the economic power that the former wields over the latter, it is likely that Circuit City employees felt at least some pressure not to opt out of the arbitration agreement." *Gentry*, 42 Cal. 4th at 471-72 (citation omitted).

Here, the contract is not an employment agreement. Avia does not wield "economic power" over users. And there is no pressure not to opt out of the arbitration agreement—quite the opposite: at the outset of the arbitration agreement, the user is told to "FOLLOW THE INSTRUCTIONS BELOW IF YOU WISH TO OPT OUT OF THE REQUIREMENT OF ARBITRATION ON AN INDIVIDUAL BASIS." 3-ER-401 and 3-ER-431.

7

Plaintiffs also rely on *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 69 (2020). But *Swain* merely followed *Gentry*. *See id.* Moreover, it was "not clear under the terms of the agreement how Swain could have opted out." *Id.* at 68. Here, by contrast, it is clear how to opt out: the user simply sends an email. *See* 3-ER-403; 3-ER-433 §15(e).

Contrary to Plaintiffs' assertions, users are not discouraged from opting out. AB 17. Plaintiffs contend that users are instructed not to access or use Avia's products or services if they do not agree to the Terms. *Id.* But one of the Terms is the opt-out provision. *See* 3-ER-403; 3-ER-433 §15(e). Users may access and use Avia's products and services while also opting out of arbitration. *See id.* Again, users are prominently instructed to follow the opt-out procedure if they wish to opt out of arbitration. 3-ER-401 and 3-ER-431.

Plaintiffs contend that "an opt-out provision is simply the 'leave it' part of a take-it-or-leave-it contract." AB 17. That is wrong. A take-it-or-leave-it contract is one that does *not* include the opportunity to opt out of arbitration while accepting

other contractual terms. Here, users may both "take" the Terms—and the ability to play Avia's games—and "leave" the arbitration provision. *See* 3-ER-403; 3-ER-433 §15(e).

Thus, the delegation clause is neither adhesive nor procedurally unconscionable.

### 2. The delegation clause was not unfairly surprising.

Plaintiffs argue that the delegation clause was unfairly surprising, citing *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982). But in *A&M*, it was "never suggested" that the plaintiff read the back of the form where a disclaimer of consequential damages was found. *Id.* at 490.

Here, the pop-up notifications Plaintiffs received prominently said "Click to Read." 3-ER-380-383 ¶¶11, 16. Upon clicking that button, the very first paragraph of the Terms put Plaintiffs on notice of "THE MANDATORY ARBITRATION PROVISION AND CLASS ACTION WAIVER IN SECTION 15." 3-ER-391, 3-ER-406. The very first paragraph of Section 15 then instructed them to "PLEASE READ THIS SECTION CAREFULLY." 3-ER-401, 3-ER-416.

9

Section 15(c) provides: "Disputes that must be arbitrated include, without limitation, disputes arising out of or relating to interpretation or application of this arbitration provision, including the enforceability, revocability, or validity of the arbitration provision or any portion of the arbitration provision." 3-ER-402, 3-ER-417 §15(c). Nothing about that delegation clause is unfair or surprising.

Plaintiffs cite the district court's assertion that the delegation clause is "in the middle of 16 numbered paragraphs, most with multiple numbered subparagraphs, within 14 pages of single-spaced, 8-point font in barely readable, light gray text." 1-ER-7. As Avia clarified, however, the Terms were in fact displayed to users in highly readable white-on-blue text in a font size comparable to that found in text messages or mobile web browsers. *See* AOB 9-11.

The district court held that the delegation clause was still "obscure and surprising" because it was "embedded in the middle of 16 numbered paragraphs, most with multiple numbered subparagraphs, within what was equivalent to 14

single-space pages." 1-ER-8 (cleaned up). In *Mohamed*, however, this Court rejected the argument that a delegation clause with an opt-out provision was "procedurally unconscionable because it was hidden in a prolix printed form." *Mohamed*, 848 F.3d at 1210. A provision need not be at the beginning of an agreement to be enforceable. "[O]ne who signs a contract is bound by its provisions," regardless of where in the contract they are found. *Id.* at 1211 (citation omitted).

The district court also asserted that "there is nothing in the text to call players' attention to the delegation clause." 1-ER-7. Avia, however, "was under no obligation to highlight the [delegation] clause of its contract, nor was it required to specifically call that clause to [Plaintiffs'] attention. Any state law imposing such an obligation would be preempted by the FAA." *Sanchez v. Valencia Holding Company*, 61 Cal. 4th 899, 914 (2015). Plaintiffs simply ignore this holding in *Sanchez*. *See* AB 20-22.

For the same reason, the district court erred in holding that the pop-up notices were required to call users' attention

11

to the arbitration agreement and the delegation clause in particular. *See* 1-ER-18-19. The district court relied on the following statement in *Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 953 (C.D. Cal. 2023): "The fact that Defendants' customers received no notice of the significant change to the [Terms] creates a situation of unfair surprise." But in *Heckman*, the Terms were amended "without giving *any* notice." *Id.* (emphasis added). Here, Plaintiffs were given notice of the updated Terms in the pop-ups. Both Pandolfi and Shawcroft clicked "Agree" on the pop-ups and Shawcroft also clicked the "Click to Read" button, accessing the Terms. 3-ER-382 ¶¶12-13. That is sufficient notice. *See B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 936 (2022) (holding that a "pop-up notice provided sufficiently conspicuous notice of the arbitration agreement such that Plaintiffs are bound by it"); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (hyperlink provided sufficient notice).

Plaintiffs continue to rely on *Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021). As Avia noted in its opening

brief, however, the facts of *Lim* were starkly different from the facts here. *See* AOB 43-45.

> Lim was presented with a contract of adhesion, i.e., a take-it-or-leave-it offer . . . on the day it was to be executed. Importantly, the district court found that Lim believed that, if he wanted to continue [his employment], he needed to sign the contract. . . . [T]he only choice TForce provided to him was to agree to the delegation clause and the rest of the contract or [lose his job]. These circumstances, especially in the employment context, indicate some degree of procedural unconscionability.

*Lim*, 8 F.4th at 1001.

Here, as discussed above, the contract is not one of adhesion. Plaintiffs had the opportunity to opt out of the arbitration agreement while still playing the games. *See* 3-ER-403; 3-ER-433 §15(e). Unlike in *Lim*, the delegation clause here is not part of an employment agreement, but the Terms of Service for a mobile gaming app. There is nothing in the record to substantiate Plaintiffs' bare assertion that they were under "time and economic pressure" to accept a gaming app's Terms. AB 22 n.6. Indeed, Plaintiffs had 30 days to opt out, refuting their suggestion that they were under "time and

13

economic pressure." *Id.*

Plaintiffs try to sweep those distinctions aside, arguing that the Court in *Lim* found "further" support for procedural unconscionability in the format of the contract. AB 22-23. But "further" support does not mean independently sufficient support. On the contrary, the Court in *Lim* held that the delegation clause there was procedurally unconscionable because "the circumstances show a degree of unfair surprise *and* oppression that left Lim without an ability to negotiate and to make only a take-it-or-leave-it decision." 8 F.4th at 1001 (emphasis added) (brackets and citation omitted). There is no indication that the Court in *Lim* would have found procedural unconscionability if, as here and in *Mohamed*, Lim had the opportunity to opt out of the arbitration agreement. *Compare id. with Mohamed*, 848 F.3d at 1210-11.

### 3. Plaintiffs' reliance on *Heckman* is misplaced.

Plaintiffs rely on the finding of procedural unconscionability in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), but that reliance is misplaced. *See*

14

AB 23-28. In *Heckman*, the Court found oppression due to Ticketmaster's market dominance. "Because Ticketmaster is the exclusive ticket seller for almost all live concerts in large venues, prospective ticket buyers in most instances are faced with a choice. They can either use Ticketmaster's website and accept its Terms, or refuse to use the website and be entirely foreclosed from purchasing tickets on the primary market." *Heckman*, 120 F.4th at 682. Plaintiffs made no such showing here. Further, users may use Avia's products and services while opting out of arbitration—a key distinction from *Heckman*.

With respect to unfair surprise, Ticketmaster's Terms were changed without notice. "Its website provides that a person merely browsing the website without purchasing a ticket agrees to Ticketmaster's changed Terms. Binding consumers who merely browse a website to the terms specified in the website has been consistently held to be unenforceable, as individuals do not have inquiry notice." *Id.* (cleaned up). The Court cited *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th

1005 (9th Cir. 2024), in which this Court noted that clickwrap agreements, by contrast, have routinely been found enforceable. *Id.* at 1014; *see also*, *e.g.*, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("courts have routinely found clickwrap agreements enforceable"); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'").

Here, Avia did not purport to bind users who merely browsed its website. Avia put users on notice of changes to the Terms through pop-up notices. Unlike in *Heckman*, users were required to manifest their assent to the updated Terms by clicking "Agree." *See* 3-ER-379-384 ¶¶6-17. That clickwrap agreement is enforceable. *See*, *e.g.*, *Keebaugh*, 100 F.4th at 1014; *Berman*, 30 F.4th at 856; *Meyer*, 868 F.3d at 75.

Plaintiffs argue that the delegation clause here is procedurally unconscionable because the arbitration agreement incorporates AAA rules that are subject to change. AB 23. In

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017), however, this Court held that incorporating AAA rules by reference is not procedurally unconscionable. *Id.* at 1262. Similarly, in *Lane v. Francis Cap. Mgmt. LLC*, 224 Cal. App. 4th 676 (2014), the court held that "the failure to attach a copy of the AAA rules did not render the agreement procedurally unconscionable. There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties—the AAA rules are available on the Internet." *Id.* at 691.

Plaintiffs do not contend—much less did they show—that they were actually surprised by any change in the AAA rules. Nor can they claim to have been surprised by the fact that the AAA Rules are subject to change. They agreed that "the *then-current* version of the AAA's Consumer Arbitration Rules will apply." 3-ER-402, 3-ER-417 (emphasis added).

Plaintiffs contend that Avia can modify the Terms "unilaterally and retroactively," claiming that the Terms state that the "modified arbitration agreement applies to all claims

17

including 'claims that accrued before you entered into this Agreement.'" AB 25. That is not what the agreement says. The provision Plaintiffs quote does not concern modifications to the arbitration agreement; it simply says that all disputes, including ones that accrued before the user entered into the agreement, are subject to binding arbitration. 3-ER-416. Changes to the agreement are subject to notice, consent, and the opportunity to opt out. *See* 3-ER-379-384 ¶¶6-17; 3-ER-403; 3-ER-433 §15(e).

Plaintiffs rely on *Heckman*'s holding that the Terms at issue there were "affirmatively misleading" because they stated that claims would be resolved by individual arbitration, whereas the arbitration rules provided that "batched" claims would be "treated in a 'class or representative' fashion." *Heckman*, 120 F.4th at 683. But the Terms at issue here say nothing of the kind.

On the contrary, the bellwether cases are "individual arbitration proceedings." 3-ER-403; 3-ER-433 §15(c)(6). "Only one case may be assigned to each arbitrator as part of a

18

bellwether process unless the parties agree otherwise." *Id.* Decisions in a bellwether case are not binding in any other case, and the bellwether procedure is not a class or representative arbitration, as the Terms make clear. See *id.*; 3-ER-401 §15.

These arbitration rules contrast sharply with those at issue in *Heckman*, where "a single arbitrator is chosen to decide all cases in the batch," and his or her decisions in three bellwether cases become precedent for all cases, binding plaintiffs "who had no chance to participate in the arbitration and who are ignorant of the decision until it is invoked against them." *Id.* at 678-79. Furthermore, the arbitration rules at issue in *Heckman* were formulated with a "remarkable degree of coordination" from defense counsel, unlike the AAA rules, which the Court in *Heckman* explicitly distinguished. *Id.* at 677-78.

Conceding that the bellwether cases are decided on an individual basis, Plaintiffs suggest that the Process Arbitrator decides gateway matters on a classwide basis. AB 26-27. But the Rules make clear that the Process Arbitrator must

decide any fact-specific disputes on an individual basis. *See* 2-ER-146 §MA-6(d)(i). Moreover, in determining "[w]hether subsequently filed cases are part of the same mass arbitration," the Process Arbitrator "must allow the parties in these subsequently filed cases the opportunity to address the applicability of any rulings to these cases before making any final determination." 2-ER-146 §MA-6(c)(ix). Plaintiffs' contention that the Process Arbitrator's decisions will be binding on "non-parties," AB 27, is incorrect.

Thus, the delegation clause is not procedurally unconscionable.

## B. The delegation clause is not substantively unconscionable.

### 1. At the time of contracting, Plaintiffs were on notice of both the potential for delay and the opportunity to opt out of arbitration.

The delegation clause is also not substantively unconscionable. Plaintiffs emphasize that "an unconscionability assessment focuses on circumstances known at the time the agreement was made." AB 29 (quoting *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 505 (2024)). According to the

district court: "At the time of contract formation, it is predictable that a player could have a dispute with Avia based on a company policy that applies across-the-board to all players, as occurred here, and will be caught up by the bellwether provision." 1-ER-10. But the fact that the bellwether process and the delay it purportedly causes are "predictable" undermines the district court's conclusion that the anticipation of delay causes a "chilling effect." *See* 1-ER-10-12. Users concerned about delays that are predictable at the time of contract formation may simply opt out of arbitration. *See* 3-ER-403; 3-ER-433 §15(e).

**2. Focusing on the time of contracting does not relieve Plaintiffs of their burden to show unconscionability in *this* case.**

Furthermore, in recognizing that unconscionability is assessed as of the time of contracting, the law does not relieve Plaintiffs of the need to show unconscionability in *their own case*. On the contrary, the California Supreme Court in *Sanchez* recognized that "courts are required to determine the unconscionability of the contract 'at the time it was made.'" 61

Cal. 4th at 920 (quoting Cal.. Civ. Code §1670.5). Nevertheless, the court held that the provision at issue, involving appellate filing fees, "cannot be held unconscionable absent a showing that appellate fees and costs in fact would be unaffordable or would have a substantial deterrent effect *in Sanchez's case.*" *Id.* (emphasis added).

Here, Plaintiffs have not shown that the bellwether procedure would have caused undue delay or would have had "a substantial deterrent effect in [*Plaintiffs'*] case." *Id.* On the contrary, the district court found that "the only plaintiffs presently before the Court have not demonstrated a concrete harm from the putatively unconscionable bellwether provision." 1-ER-59. That should have been the end of the matter.

Instead, the district court relied on a declaration from the Kind Law firm, purportedly demonstrating that thousands of similar cases would be filed in arbitration. *See* 1-ER-11-12.[1] The district court acknowledged that "Plaintiffs'

---

[1] Note that if thousands of cases are filed in arbitration, AAA cannot try them all at once in any event. Thus, there will be the prospect of delay whether a bellwether procedure is used

counsel and the Kind firm do not, as a facial matter, appear to have coordinated efforts." 1-ER-34. But the district court speculated that "[i]t is likely that, in arbitration, the claims of Plaintiffs herein and the similar claims brought by the individuals represented by the Kind Law firm would be coordinated. . . ." 1-ER-12. That is "too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

Plaintiffs attempt to distinguish *Green Tree* on the basis that the agreement there was silent with respect to the costs and fees the plaintiff contended were unconscionable. AB 37. But the agreement here is silent about the arbitrator purportedly coordinating claims that are not brought by the same or coordinated counsel and are not otherwise coordinated by plaintiffs' counsel. The purported "risk" that the arbitrator would join the Kind firm's claims with Plaintiffs' is just as

---

or not. In either case, the AAA arbitrators have both the discretion and the duty to minimize delay. *See* 2-ER-153, Principle 8 ("ADR proceedings should occur within a reasonable time, without undue delay.").

speculative as the risk of burdensome fees in *Green Tree*. *See* 531 U.S. at 91. It is no basis for invalidating the delegation clause.

### 3. Process Arbitrators may rule on their own jurisdiction and thus may decide arbitrability.

Plaintiffs argue that the bellwether process will result in unconscionable delay in deciding the issue of arbitrability. But that issue may be decided by a Process Arbitrator prior to any bellwether process. Process Arbitrators are given "the power to rule on their own jurisdiction." 2-ER-146 at MA-6(d). "By giving the arbitral tribunal the authority to decide its own jurisdiction, [the] rules vest the arbitrator with the apparent authority to decide questions of arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1073 (9th Cir. 2013).

Plaintiffs try to distinguish *Oracle* on the basis that it did not involve a Process Arbitrator and did not address the AAA Supplementary Rules. AB 40. Those are distinctions without a difference. Plaintiffs may challenge the Process Arbitrator's jurisdiction on the basis of unconscionability, which

2889709

would then be a jurisdictional issue for the Process Arbitrator to decide. *See* 2-ER-146 at MA-6(d).

Plaintiffs contend that the other issues the Process Arbitrator is empowered to decide, in MA-6(c), are non-merits issues. AB 39. But the issue of jurisdiction is called out as a separate category of decision in MA-6(d). *See* 2-ER-146 §MA-6(d). Moreover, whether employing the bellwether procedure will cause undue delay may be decided as a process question along with "[w]hich Demands for Arbitration should be included as part of the mass arbitration filing," "the applicable AAA-ICDR Rules that will govern the individual disputes," and "[w]hether subsequently filed cases are part of the same mass arbitration." 2-ER-145-46 §§MA-6(c)(iv), (vi), (ix).

Contrary to Plaintiffs' assertions, reading the agreement and the Rules to allow Process Arbitrators to decide the gateway issue of arbitrability does not "disregard the plain text of the arbitration agreement." AB 40. Nothing in the arbitration agreement or the Rules is inconsistent with applying the general principle that, in deciding its own jurisdiction, the

25

Process Arbitrator may decide the issue of arbitrability. *See Oracle*, 724 F.3d at 1073.

Plaintiffs argue that interpreting the agreement and Rules to allow the Process Arbitrator to decide gateway issues of arbitrability presents "due process concerns" because Process Arbitrators have the power to decide whether previously issued rulings are binding on subsequent cases. AB 41-42. Plaintiffs speculate that Process Arbitrators would refuse to hear arguments against applying previously issued rulings. *Id.* But Plaintiffs ignore the requirement that, in determining "[w]hether subsequently filed cases are part of the same mass arbitration," the Process Arbitrator "*must* allow the parties in these subsequently filed cases the opportunity to address the applicability of any rulings to these cases before making any final determination." 2-ER-146 § MA-6(c)(ix) (emphasis added).

Plaintiffs contend that if Process Arbitrators decide unconscionability and plaintiffs are given the opportunity to dispute prior rulings, that "would result in the very same delay

that Avia says is unlikely." AB 42 n.10. That assumes that plaintiffs' unconscionability arguments will be unsuccessful and that plaintiffs will nonetheless continue to pursue the same unsuccessful arguments in case after case. Plaintiffs should not be heard to complain about hypothetical delays of their own making.

### 4. Plaintiffs' argument that users are forced to give up their right to experienced counsel is meritless.

Plaintiffs argue that the bellwether procedure is unconscionable because "Avia's Terms force only its users—not Avia itself—to give up their right to experienced counsel dealing with similar cases." AB 43.[2] But the Terms do not require users to give up their right to experienced counsel. Plaintiffs' argument is based on their contention that users "must find

---

[2] To the extent Plaintiffs' argument is that there is an inherent asymmetry in the bellwether procedure because it is more likely to apply to users' claims than Avia's claims, a "contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) (citation and quotation marks omitted).

2889709

different lawyers and refuse any opportunities to coordinate (such as coordinating discovery) to avoid being thrown into the batching process." *Id.* Not so. To avoid the bellwether process, users may simply opt out of arbitration. *See* 3-ER-403; 3-ER-433 §15(e).

Plaintiffs contend that they did not have an informed choice to opt out because the Terms provide that users should not access or use Avia products or services if they do not agree to the Terms. *See* AB 45; 3-ER-391. But users are prominently told to "FOLLOW THE INSTRUCTIONS BELOW IF YOU WISH TO OPT OUT OF THE REQUIREMENT OF ARBITRATION ON AN INDIVIDUAL BASIS." 1-ER-401. Contrary to Plaintiffs' contention, the opt-out provision is not "buried." AB 46. And even if "the opt-out provision was 'buried in the agreement' . . . one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." *Mohamed*, 848 F.3d at 1211 (citation and quotation marks omitted).

2889709

### 5. The bellwether procedure is a reasonable means of case management.

As Avia explained in opening, and as further explained by *amicus* the Chamber of Commerce of the United States of America, the bellwether procedure here is a perfectly reasonable way to manage large numbers of arbitration demands. *See* Chamber of Commerce Br. (Dkt. 22.1). Especially because the "instant Agreements provide for the tolling of any applicable statute of limitations," the "Mass Arbitration Protocol constitutes a 'system to adjudicate a group of cases with the purpose of facilitating global or widespread resolution via ADR,' not one that 'formally bar[s] the timely adjudication of cases that do not settle.'" *Ruiz v. CarMax Auto Superstores, Inc.*, No. EDCV231986JGBKKX, 2024 WL 1136332, at *6 (C.D. Cal. Jan. 18, 2024) (quoting and distinguishing *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1044 (N.D. Cal. 2022)).

Plaintiffs and their *amicus* Public Citizen try to distinguish the bellwether procedure here from that used in MDL proceedings, but in both instances, the bellwether process is

"designed to produce a verdict that would highlight the strengths and weaknesses of the parties' respective cases and . . . promote settlement." *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 995 (9th Cir. 2008); *see also Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015).

Plaintiffs and their *amicus* contend that, even if Avia loses the bellwether cases, it will not have an incentive to settle. But there is no basis for that contention. Faced with a series of unfavorable arbitration decisions, Avia would have every incentive to settle. On the other hand, if Avia prevails, plaintiffs would be incentivized to settle. Neither side would be likely to ignore the results of bellwether arbitrations.

Because bellwether cases promote settlement, the speculation by Plaintiffs and their *amicus* about unconscionably long delays is unfounded. After an initial tranche of bellwether arbitrations, the parties will have twenty examples of how arbitrators have ruled. The parties in the remaining cases will use that information to inform settlement negotiations. The notion that thousands of cases will remain for

individual arbitration after one or two rounds of bellwether cases is unrealistic. The district court erred in denying arbitration based on such speculation. *See Green Tree*, 531 U.S. at 91.

## C. If the bellwether provision is unconscionable, it should be severed and the delegation clause should be enforced.

As Avia demonstrated in opening, if the bellwether provision is unconscionable, the district court abused its discretion in refusing to sever it.

Plaintiffs contend that the "delegation clause is not severable" because the bellwether procedure is purportedly "central to the delegation clause." The issue is not whether the delegation clause is severable, but whether the bellwether provision is severable, leaving the delegation clause to be enforced. The bellwether provision is severable because the delegation clause does not depend on it. The arbitrator can decide issues of arbitrability without using the bellwether procedure. In fact, severing the bellwether provision would simply mean that the AAA Supplementary Rules for Multiple Case Filings

would apply without the bellwether process. *See* 3-ER-403 §15(c)(6). Plaintiffs' own *amicus* cites those rules as "case management measures parties can adopt to facilitate efficient resolution of large numbers of similar claims." Dkt. 35.1 at 16.

Plaintiffs contend that severance is inappropriate because it "would prompt companies to include unlawful terms going forward." AB 54. But that is not the case. If the Court were to find the bellwether provision unconscionable due to delay, it would be the first such decision by this Court. Going forward, parties drafting arbitration agreements with such provisions could not rely on severance to save those agreements. As the California Supreme Court made clear in *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064 (2003), a key question is whether "the state of the law was 'sufficiently clear at the time the arbitration agreement was signed to lead to the conclusion that [the provision at issue] was drafted in bad faith.'" *Id.* at 1076 (quoting *Armendariz*, 24 Cal. 4th at 124-25 n.13).

Plaintiffs ignore *Little*, suggesting that it is irrelevant whether prior case law made unconscionability clear. *See* AB

32

54-55. But the California Supreme Court in *Little* severed an unconscionable provision because the court could not "determin[e] that the provision was directly contrary to settled law and therefore inferentially drafted in bad faith." *Id.* The bellwether provision here may be severed for the same reason.

Like the district court, Plaintiffs rely on *Hale v. Brinker Int'l, Inc.*, No. 21-CV-09978-VC, 2022 WL 2187397 (N.D. Cal. June 17, 2022), but *Hale* proves Avia's point. In *Hale*, the court declined to sever a provision that was unconscionable under *Armendariz* because "*Armendariz* predated the contract between Hale and Brinker by five years. Brinker therefore had the opportunity to revise its agreement to strip out the unconscionable cost-splitting provision and failed to do so." *Id.* at *1. Thus, Plaintiffs' suggestion that the state of the law at the time of contracting is irrelevant to the severability analysis is disproven by Plaintiffs' own case. *See id.*

Unlike in *Hale*, any purported unconscionability of the bellwether provision here was not clear when the agreements were executed. Indeed, for the reasons set forth above, the

provision is not unconscionable at all. If the Court decides otherwise, however, that would be a new legal precedent and thus severance would be appropriate.

Furthermore, the parties agreed that any unconscionable provisions would be severed and the remainder of the agreement would be enforced. 3-ER-403-04 §15(f). The district court erroneously failed to even consider the severance clause. *See* 1-ER-16-18.

Contrary to Plaintiffs' argument, Avia did not engage in a systematic effort to impose arbitration as an inferior forum. AB 55. *Avia did not impose arbitration at all.* Instead, it provided users with an easy way to opt out of arbitration by simply sending an email. Plaintiffs have not pointed to a single case in which an arbitration agreement with an opt-out provision was deemed to be a systematic effort to impose arbitration as an inferior forum.

Thus, the district court abused its discretion in refusing to sever the bellwether provision.

2889709

**D. The arbitration agreement as a whole is not unconscionable.**

> **1. The arbitration agreement is not procedurally unconscionable.**

As with the delegation clause, Plaintiffs argue that the arbitration agreement as a whole is procedurally unconscionable because "it is part of an adhesion contract presented to users on a take-it-or-leave-it basis." AB 47. That is wrong. As discussed above, the agreement was *not* presented on a take-it-or-leave-it basis. On the contrary, users could access Avia's products and services while opting out of arbitration. *See* 3-ER-403; 3-ER-433 §15(e).

Plaintiffs also cite *Heckman* for the proposition that the agreement was procedurally unconscionable because Plaintiffs entered into it by agreeing to updated Terms presented in pop-up boxes. AB 47-48. But this case is nothing like *Heckman*, where users were given *no notice* of the updated terms, which the plaintiffs purportedly agreed to merely because they visited the defendant's website. *Heckman*, 120 F.4th at 682. Here, Plaintiffs were informed that Avia had updated its Terms through pop-up notices directing Plaintiffs to the

35

updated Terms and requiring Plaintiffs' clickwrap assent. Plaintiffs had more than adequate notice of the updated Terms. *See, e.g., Keebaugh*, 100 F.4th at 1014; *Berman*, 30 F.4th at 856; *Meyer*, 868 F.3d at 75.

## 2. The arbitration agreement is not substantively unconscionable.

For the reasons already stated, the bellwether provision is not substantively unconscionable. Further, "the one-year statute of limitations . . . does not make the arbitration provision itself unconscionable under California law." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1032 (9th Cir. 2016).

Plaintiffs try to distinguish *Tompkins* on the basis that the one-year statute of limitations there was mutual. AB 51. But the statute of limitations here should likewise be interpreted as applying mutually to avoid unconscionability. *See Ramirez*, 16 Cal. 5th at 507. "Disputes you may have arising out of or relating to these Terms or the Services must be commenced within one year after the cause of action accrues; otherwise, such cause of action or claim is permanently barred." 3-ER-403 §15(d). A user "may have" a dispute with Avia if the

user brings the dispute *or* if Avia does. The limitations provision is mutual because it applies to both kinds of disputes. This is confirmed by the broad definition of "disputes": "All disputes, claims or controversies arising out of or relating to these Terms, any Services, or the relationship between you and Aviagames." 3-ER-401 §15(a).

The cases Plaintiffs rely on do not support their argument that the limitations period here is unconscionable. In *Ramirez*, the limitations period deprived employees of the right to have the Department of Fair Employment and Housing (DFEH) investigate their claims under the Fair Employment and Housing Act. 16 Cal. 5th at 502. "The involvement of the DFEH serves an important function and may be helpful because it requires a prompt, detailed response from the employer, giving the employee a free, quick look at the defenses the employer is likely to raise." *Id.* (cleaned up). There is no such administrative investigation at issue here.

In *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080 (9th Cir. 2024), *Jenkins v. Dermatology Management, LLC*, 107

Cal. App. 5th 633 (2024), *De Leon v. Pinnacle Property Management Services, LLC*, 72 Cal. App. 5th 476 (2021), and *Gentry*, the courts addressed *employees' statutory* rights. But a "family in search of a job confronts a very different set of burdens than one seeking a new vehicle"—much less someone who merely wants to play a game. *Sanchez*, 61 Cal. 4th at 919-20 (citation omitted). "Consumers, who face significantly less economic pressure, would seem to require measurably less protection." *Id.* at 920 (citation and brackets omitted).

## E. If the bellwether and limitations provisions are unconscionable, they should be severed.

If the arbitration clause is unconscionable because of the bellwether and statute of limitations provisions, the district court abused its discretion in refusing to sever those provisions. Plaintiffs again argue that Avia engaged in a systematic effort to impose arbitration. But Plaintiffs ignore the fact that they were not required to arbitrate their claims at all—they could opt out. *See* 3-ER-403; 3-ER-433 §15(e). Once again, Avia did not impose arbitration and Plaintiffs fail to cite any case in which an arbitration agreement with an opt-

out clause was deemed an effort to impose arbitration as an inferior forum.

## F. *Discover Bank* does not apply here.

Finally, Plaintiffs contend that the class-waiver provision in the agreement is unconscionable under *Discover Bank* and *Heckman*. Plaintiffs are wrong.

In *Discover Bank*, the California Supreme Court held that class action waivers in consumer *contracts of adhesion* are unconscionable under California law. *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162 (2005). As discussed above, however, the contracts at issue here are not adhesive. Plaintiffs had the opportunity to opt out. Thus, *Discover Bank* does not apply by its own terms.

Furthermore, "California's *Discover Bank* rule is preempted by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). In *Heckman*, this Court held that the FAA did not preempt the application of *Discover Bank* to the highly distinguishable arbitration agreement at issue there, which was "unworthy even of the name of arbitration." 120

F.4th at 690 (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999)). The Court explicitly distinguished the arbitration rules at issue in *Heckman* from AAA's rules. *Id.* at 678 ("New Era's Rules for Expedited/Mass Arbitration proceedings differ significantly from the rules of traditional arbitration fora such as" AAA).

The Court in *Heckman* held that the FAA did not apply because "Congress did not have class-wide arbitration in mind when it passed the FAA." *Id.* at 689. As discussed above, the arbitration rules in *Heckman* provided that "batched" claims would be "treated in a 'class or representative' fashion." *Id.* at 683. A "single arbitrator [would be] chosen to decide all cases in the batch," and the rulings in three bellwether cases would become precedent for all cases. *Id.* at 678. Plaintiffs would be bound by those decisions even though they "had no chance to participate in the arbitration and . . . are ignorant of the decision until it is invoked against them." *Id.* at 679.

This case, unlike *Heckman*, does not involve class or representative arbitration. *See* 3-ER-403; 3-ER-433 §15(c)(6).

Rather, "[o]nly one case may be assigned to each arbitrator as part of a bellwether process unless the parties agree otherwise." *Id.* And decisions in bellwether cases are not binding in any other case, unlike in *Heckman. See id.*; 3-ER-401 § 15.

Thus, *Discover Bank* does not apply because the contracts here are not adhesive and because *Discover Bank* is preempted by the FAA under *Concepcion*.

## III. CONCLUSION

For all of the foregoing reasons and those in Avia's opening brief, this Court should reverse the district court's denial of Avia's motion to compel arbitration and order that this case proceed to arbitration.

2889709

Dated: May 9, 2025       Respectfully submitted,

KEKER, VAN NEST &
PETERS LLP

By: */s/ Dan Jackson*      
    STEVEN K. TAYLOR
    MICHELLE YBARRA
    DAN JACKSON
    MAILE N. YEATS-ROWE

*Attorneys for Defendant*
*AVIAGAMES, INC.*


Dated: May 9, 2025       Respectfully submitted,

KWUN BHANSALI LAZARUS
LLP

By: */s/ Kate E. Lazarus*    
    ASIM M. BHANSALI
    KATE E. LAZARUS

*Attorneys for Defendants*
*VICKIE YANJUAN CHEN*
*and PING WANG*

42

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-5817

I am the attorney or self-represented party.

**This brief contains** 6,992 **words,** including [ ] words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [ ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Dan Jackson **Date** May 9, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*